# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

*People v. Milam*, **2012 IL App (1st) 100832**

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. RICHARD MILAM, Defendant-Appellant. |
| District & No. | First District, Sixth Division<br>Docket No. 1-10-0832 |
| Filed | May 18, 2012 |
| Rehearing denied | September 5, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The dismissal of defendant's amended postconviction petition at the second stage of the proceedings was reversed and the cause was remanded with directions to conduct a second-stage evaluation after allowing defendant to amend his amended petition to assert a claim of ineffective assistance of his appellate counsel which prevented the trial court from considering the claim that his trial counsel was not allowed to see him at the time he was signing a confession, since the failure of defendant's postconviction counsel to make a "routine amendment" to the postconviction petition that would have presented defendant's claim in an appropriate legal form placed defendant in the same position he would have been in if the claim had not been raised at all. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 96-CR-13548; the Hon. John Joseph Hynes, Judge, presiding. |
| Judgment | Reversed and remanded with directions. |

| Counsel on Appeal | Michael J. Pelletier, Alan D. Goldberg, and Laura A. Weiler, all of State Appellate Defender's Office, of Chicago, for appellant. |
| | |
| | Anita M. Alvarez, State's Attorney, of Chicago (Alan J. Spellberg, Brian K. Hodes, and Sebastian Soto, Assistant State's Attorneys, of counsel), for the People. |
| | |
| Panel | JUSTICE PALMER delivered the judgment of the court, with opinion. Presiding Justice R. Gordon and Justice Lampkin concurred in the judgment and opinion. |

**OPINION**

¶ 1    Defendant Richard Milam appeals from the second-stage dismissal of his amended petition for relief under the Post-Conviction Hearing Act (Act). 725 ILCS 5/122-1 to 122-8 (West 2000). Defendant contends that postconviction counsel did not fulfill her duties under Illinois Supreme Court Rule 651(c) (eff. Dec. 1, 1984), because she failed to allege ineffective assistance of appellate counsel in the amended petition to overcome the procedural bar of waiver. We reverse and remand with instructions.

¶ 2                                    BACKGROUND

¶ 3    On May 23, 1996, defendant was charged with the first degree murder of his wife, Tammy Milam, who was stabbed to death on January 13, 1994. Before trial, defendant moved to suppress his confession, arguing, *inter alia*, that law enforcement personnel ignored his request for counsel and that his statement was procured by an act of delay by the authorities. The trial court held a hearing on the motion, where the evidence established that defendant was questioned on November 29, 1995, and on May 15, 1996, in connection with Tammy's murder.

¶ 4    At the hearing, the State's witnesses included Investigator Joseph Curtin and Assistant State's Attorneys Thomas Dixon and James McCarter. According to their testimony, at both interviews Curtin asked defendant whether he was represented by an attorney and defendant replied he was not. On both dates Curtin also read defendant his *Miranda* rights and had defendant sign a form stating that he waived his rights. On May 15, 1996, defendant was interviewed at the courthouse, resulting in a confession. The confession was dictated to and written by Dixon and signed by defendant at 6:36 p.m. Curtin and Dixon both testified that defendant never asked for an attorney during the interview and neither was aware that an attorney was present at the courthouse until after the statement was signed. McCarter testified that at 6:30 p.m., Raymond Fabricius arrived at the courthouse and identified himself as defendant's attorney. McCarter asked Fabricius for identification, made a copy of Fabricius's

-2-

attorney registration card, then permitted Fabricius to see defendant. About 10 minutes passed between the time Fabricius arrived and when he saw defendant.

¶ 5        Raymond Fabricius and defendant testified that sometime between November 1995 and May 1996 defendant asked Fabricius to be present at any interrogations related to Tammy's murder. At both interviews, defendant asked to have an attorney present and was denied by the investigators. He was never read his *Miranda* rights. At the May 15 interview, Curtin told defendant that signing the form waiving his *Miranda* rights was simply a formality and ignored defendant's multiple requests for an attorney. Fabricius arrived at the courthouse and asked to see defendant at 6:32 p.m. He was told to wait. About 11 or 12 minutes later, McCarter asked Fabricius for a card and told him they were finishing up with defendant. Three minutes later, Fabricius was permitted to see defendant. Defendant had already signed the statement.

¶ 6        The trial court denied defendant's motion.

¶ 7        The evidence at trial essentially established that on the evening of January 13, 1994, both defendant and Tammy Milam were stabbed. Defendant told the police that they were attacked by an assailant when they entered their van after going out to dinner. In the course of the investigation, police discovered that defendant and Tammy both used drugs, that they had been having domestic and financial problems, and that Tammy had various life insurance policies totaling over $100,000. Several witnesses testified that defendant was violent toward his wife on occasion. William Love testified that defendant had come to him with a plan to kill Tammy, but Love never followed through with it. Defendant later confessed to Love that he had stabbed Tammy.

¶ 8        The State also introduced defendant's confession at trial, in which defendant stated, *inter alia*, that when Tammy opened the door to the van after dinner, a knife fell from inside the van to the ground. Tammy retrieved the knife and the couple began to argue. The argument escalated until Tammy stabbed defendant in the shoulder. Defendant then "lost it," took the knife from Tammy and stabbed her two or three times.

¶ 9        The jury found defendant guilty of first degree murder. Defendant filed a posttrial motion in which he claimed, among other assertions, that the authorities improperly delayed his attorney's attempt to speak with him. The trial court denied the motion and sentenced defendant to 55 years in prison.

¶ 10        On direct appeal, defendant asserted that the trial court erred in denying his motion to suppress because his confession was involuntary. Defendant specifically claimed that: (1) his confession was obtained after he requested the presence of counsel; (2) the waiver of his *Miranda* rights was obtained by trickery and deception; (3) his confession was procured following a violation of the Illinois Rules of Professional Conduct; and (4) his confession was obtained by threats and coercion. This court affirmed defendant's conviction and sentence, finding that the trial court's denial of his motion to suppress was not against the manifest weight of the evidence. *People v. Milam*, No. 1-98-2091 (2000) (unpublished order under Supreme Court Rule 23).

¶ 11        On May 2, 2001, defendant filed a *pro se* postconviction petition alleging ineffective assistance of trial counsel based on counsel's failure to test evidence and call witnesses

material to the case. Defendant claimed that trial counsel refused defendant's requests to test defendant's clothing for DNA evidence. Defendant also claimed that trial counsel failed to call attorney Joseph Haddad as a witness. Defendant maintained that, if called, Haddad would have testified that in 1994 he represented defendant and had told Bridgeview detectives that if they needed to talk to defendant they should contact Haddad first. The trial court appointed counsel to represent defendant.

¶ 12 On January 19, 2007, appointed counsel filed what was ultimately considered to be an amended postconviction petition, a motion for forensic testing and a certificate pursuant to Rule 651(c). In the amended petition, counsel alleged that the untimely filing of the petition was not due to defendant's culpable negligence. Counsel also alleged that defendant's due process rights were violated when his attorney, Raymond Fabricius, was prevented from seeing defendant at the courthouse while defendant was signing the written confession.

¶ 13 In the motion for forensic testing, counsel specifically requested the DNA testing of defendant's clothing from the night of the murder. Counsel also filed a motion for discovery to establish the chain of custody as to defendant's clothing because the police reported they were unable to locate the clothing. The trial court ultimately granted both motions and the clothing was eventually located. The DNA test results showed that the blood on defendant's clothing was that of either Tammy or defendant. The blood of a third party was not present.

¶ 14 In the Rule 651(c) certificate, appointed counsel stated that: (1) she had communicated with defendant by letter and phone to ascertain his claims; (2) she had examined the transcript of defendant's trial and sentencing hearing; and (3) defendant's *pro se* postconviction petition, together with the amended petition and motion for forensic testing filed by appointed counsel, adequately presented defendant's claims.

¶ 15 On August 10, 2007, the State filed a motion to dismiss the petition, claiming that the petition was untimely and that the allegation regarding defendant's attorney being prevented from seeing him was without merit and was procedurally barred.

¶ 16 On December 3, 2007, appointed counsel filed a response to the State's motion to dismiss, again alleging defendant's lack of culpable negligence. Counsel further contended that defendant's due process claim was not procedurally barred by *res judicata* because one of the decisions she relied on in the amended petition was not issued until three years after defendant's direct appeal. *People v. Woods*, 338 Ill. App. 3d 78, 87 (2003) (holding that refusing to tell a defendant that his attorney was present and denying the attorney access to the defendant violated the defendant's constitutional rights).

¶ 17 On November 6, 2009, the trial court held a hearing on the motion to dismiss. At the hearing, appointed counsel informed the court that defendant was dropping the claims in his *pro se* petition and proceeding on the amended petition alone. Counsel acknowledged that the due process claim in the amended petition was not raised on appeal but argued that waiver should not apply because the case she relied upon in support of the claim, *Woods*, was decided after defendant's direct appeal. However, the trial court pointed out that she had also relied on another case for the same issue which had been decided long before the direct appeal. See *People v. McCauley*, 163 Ill. 2d 414 (1994).

¶ 18 The trial court dismissed defendant's petition in a written order. The court explained that

although it did not believe defendant had demonstrated he was free from culpable negligence in his untimely filed petition, it was hesitant to dismiss the petition on that basis given this court's decision in *People v. Wheeler*, 392 Ill. App. 3d 303 (2009). As a result, the trial court did not dismiss the petition on the basis of untimeliness alone but did find that the claim in the petition was barred by *res judicata*. The court further found that, even if *res judicata* did not apply, defendant's claim was barred by waiver because he could have raised it on direct appeal. Defendant appeals from the trial court's order.

¶ 19                                                    ANALYSIS

¶ 20        The Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 to 122-8 (West 2000)) provides "a remedy for defendants who have suffered a substantial violation of their constitutional rights at trial." *People v. Edwards*, 197 Ill. 2d 239, 243-44 (2001). Under the Act, a postconviction proceeding in noncapital cases contains three stages. *People v. Pendleton*, 223 Ill. 2d 458, 471-72 (2006). At the first stage, the trial court has 90 days to review a defendant's petition and may summarily dismiss the petition if the court finds it frivolous and patently without merit. 725 ILCS 5/122-2.1(a)(2) (West 2000); *Pendleton*, 223 Ill. 2d at 472. If the trial court does not dismiss the petition within that 90-day period, the court must docket it for further consideration. 725 ILCS 5/122-2.1(b) (West 2000); *Pendleton*, 223 Ill. 2d at 472.

¶ 21        Here, defendant's petition proceeded to the second stage. At the second stage of postconviction proceedings, counsel may be appointed for the defendant if the defendant is indigent. 725 ILCS 5/122-4 (West 2000); *Pendleton*, 223 Ill. 2d at 472. The right to postconviction counsel is statutory, not constitutional. 725 ILCS 5/122-4 (West 2000); *People v. Thompson*, 383 Ill. App. 3d 924, 931 (2008). The Act requires that postconviction counsel provide a reasonable level of assistance to a defendant. *Thompson*, 383 Ill. App. 3d at 931. Supreme Court Rule 651(c) imposes specific duties on postconviction counsel, requiring that counsel: (1) consult with the defendant to ascertain his contentions of constitutional deprivations; (2) examine the record of the trial proceedings; and (3) make any amendments to the *pro se* petition necessary to adequately present the defendant's contentions. Ill. S. Ct. R. 651(c) (eff. Dec. 1, 1984); *People v. Suarez*, 224 Ill. 2d 37, 42 (2007).

¶ 22        After postconviction counsel has made any necessary amendments to the defendant's petition, the State may move to dismiss it. 725 ILCS 5/122-5 (West 2000); *Pendleton*, 223 Ill. 2d at 472. If the State moves to dismiss, the trial court may hold a hearing on the State's motion. *Pendleton*, 223 Ill. 2d at 472-73. At the hearing, the trial court is foreclosed from engaging in any fact-finding and all well-pleaded facts that are not positively rebutted by the trial record are to be taken as true. *Pendleton*, 223 Ill. 2d at 473. If the State's motion is denied, the State must answer the defendant's petition and the proceeding then advances to the third stage, an evidentiary hearing where the defendant may present evidence in support of his petition. 725 ILCS 5/122-6 (West 2000); *Pendleton*, 223 Ill. 2d at 472-73.

¶ 23        Here the trial court dismissed defendant's petition at the second stage of proceedings. The dismissal of a postconviction petition without an evidentiary hearing is reviewed *de*

*novo*. *Suarez*, 224 Ill. 2d at 42.

¶ 24    Defendant's only argument on appeal is that postconviction counsel did not fulfill her duties under Rule 651(c) because she failed to allege ineffective assistance of appellate counsel in the amended petition to overcome the procedural bar of waiver. Before considering the merits of defendant's argument, we first address two of the State's contentions.

¶ 25    The State first contends that defendant's claim is not a viable freestanding constitutional claim that can be heard on appeal because defendant does not attack the sufficiency of the Rule 651(c) certificate. See *People v. Mendoza*, 402 Ill. App. 3d 808, 816-17 (2010) (the defendant's claim was improper on appeal where he made a general claim of unreasonable assistance of counsel but did not allege counsel's failure to comply with Rule 651(c)). We disagree with the State and note that, here, defendant specifically invoked Rule 651(c) in making his claim of unreasonable assistance of counsel, asserting that his counsel did not adequately amend his petition in compliance with the rule.

¶ 26    The State also contends that, notwithstanding waiver, the trial court's dismissal of defendant's amended petition was primarily based on *res judicata* and that *res judicata* bars defendant's due process claim. "The doctrine of *res judicata* bars consideration of issues that were previously raised and decided on direct appeal. *People v. West*, 187 Ill. 2d 418, 425 (1999); accord Black's Law Dictionary 1336-37 (8th ed. 2004) ('*res judicata* is an issue that has been definitively settled by judicial decision')." *People v. Blair*, 215 Ill. 2d 427, 443 (2005). After reviewing our decision on direct appeal, we cannot say that defendant's current due process claim as set forth in his amended petition was considered or decided by this court.

¶ 27    On direct appeal, defendant raised and we considered whether his confession was involuntary based on four specific arguments, including that: (1) his confession was obtained after he requested the presence of counsel; (2) the waiver of his *Miranda* rights was obtained by trickery and deception; (3) his confession was procured following a violation of the Illinois Rules of Professional Conduct; and (4) his confession was obtained by threats and coercion. In the amended petition, defendant argued that his confession was involuntary because his due process rights were violated when his attorney, Raymond Fabricius, was prevented from seeing him while he was signing the written confession. Although this claim pertains generally to whether defendant's confession was voluntary, the broad issue addressed on appeal, the claim relies on facts and circumstances that were not considered by this court. Accordingly, defendant's claim is not barred by the doctrine of *res judicata* and we consider whether postconviction counsel provided a reasonable level of assistance to defendant.

¶ 28    As mentioned, Rule 651(c) requires postconviction counsel to: (1) consult with the defendant to ascertain his contentions of constitutional deprivations; (2) examine the record of the trial proceedings; and (3) make any amendments to the *pro se* petition necessary to adequately present the defendant's contentions. Ill. S. Ct. R. 651(c) (eff. Dec. 1, 1984); *Suarez*, 224 Ill. 2d at 42.

¶ 29    Defendant argues that postconviction counsel's failure to allege ineffective assistance of

appellate counsel in the amended petition to avoid waiver of the due process claim violated Rule 651(c). The State responds that Rule 651(c) only requires postconviction counsel to adequately present the claims in defendant's *pro se* petition and that this requirement does not apply where, as here, counsel raises a new claim on defendant's behalf. Defendant initially replies that postconviction counsel did not raise a new claim in the amended petition but merely presented one of the original claims from defendant's *pro se* petition in proper legal form.

¶ 30    In the *pro se* petition, defendant alleged that his trial counsel was ineffective for failing to call attorney Joseph Haddad to testify at the suppression hearing. Specifically, defendant claimed:

"In 1994, attorney Joseph Haddad, who was retained by [defendant], contacted Bridgeview detectives to inform them that he was, in fact, [defendant's] attorney and that if they wished to speak to him or if they needed him for anything that they should contact him first. *** At the time [defendant] was taken into custody and taken to the police station, he was represented by Mr. Haddad. Bridgeview detectives were well aware of this fact."

At oral argument in this court, defendant argued that this language, interpreted liberally (see *Edwards*, 197 Ill. 2d at 244 (petitions filed *pro se* should be given a liberal construction)), could be construed as a claim that defendant's waiver of his right to an attorney was not valid where Fabricius was delayed from seeing defendant until after he signed the confession.

¶ 31    Although both claims arguably pertain to whether defendant's confession was voluntary, each relies on a different legal theory and set of facts. In the *pro se* petition, defendant alleged that detectives knew he was represented by attorney Haddad at the time they interrogated defendant and should have contacted Haddad before the interrogation. In the amended petition, however, postconviction counsel alleged that attorney Fabricius, not Haddad, went to the courthouse at 6:30 p.m. and attempted to see defendant but was delayed by Assistant State's Attorney McCarter for about 12 minutes. During that time defendant signed the statement. Even after liberally construing the claim in defendant's *pro se* petition, we cannot say that these two claims are the same. Accordingly, we agree with the State that postconviction counsel raised a new claim that was not included in defendant's *pro se* petition.

¶ 32    Relying on *People v. Turner*, 187 Ill. 2d 406 (1999), defendant still argues that postconviction counsel failed to adequately present this new claim. Defendant claims that, as in *Turner*, counsel's failure to amend the petition to allege ineffective assistance of appellate counsel to avoid the procedural bar of waiver amounted to inadequate representation. The State responds that *Turner* is distinguishable from this case because in *Turner*, counsel failed to allege ineffective assistance of appellate counsel to overcome waiver of one of the defendant's *pro se* claims, not a new claim advanced by postconviction counsel. The State maintains that in this case postconviction counsel more than fulfilled her obligations under Rule 651(c) when she went beyond the requirements of the rule and advanced a new claim on defendant's behalf.

¶ 33    Under Rule 651(c) there is no requirement that postconviction counsel must amend a

defendant's *pro se* petition or scour the record to uncover claims that were not raised by the defendant. See Ill. S. Ct. R. 651(c) (eff. Dec. 1, 1984); *People v. Rials*, 345 Ill. App. 3d 636, 641 (2003). However, as mentioned, Rule 651(c) requires that postconviction counsel make any amendments to the *pro se* petition necessary to adequately present the defendant's contentions. Ill. S. Ct. R. 651(c) (eff. Dec. 1, 1984); *Turner*, 187 Ill. 2d at 412. To that end, postconviction counsel must shape the defendant's *pro se* claims into "appropriate legal form." *People v. Johnson*, 154 Ill. 2d 227, 237-38 (1993).

¶ 34    In *Turner*, a capital case, the defendant's appointed postconviction counsel did not file an amended postconviction petition but instead elected to stand on the defendant's *pro se* petition. *Turner*, 187 Ill. 2d at 409. The trial court granted the State's motion to dismiss the defendant's petition without an evidentiary hearing, finding the claims in the petition were barred by *res judicata* or waived because the claims could have been raised on direct appeal but were not. *Turner*, 187 Ill. 2d at 409. The defendant appealed, contending that his postconviction counsel's failure to make any amendments to the *pro se* petition violated Rule 651(c). *Turner*, 187 Ill. 2d at 412.

¶ 35    Our supreme court agreed, after finding that postconviction counsel failed to make a "routine amendment" to the postconviction petition to include a claim of ineffective assistance of appellate counsel which would have overcome the procedural bar of waiver. *Turner*, 187 Ill. 2d at 413. In doing so, the court in *Turner* noted the ease with which a defendant may evade the operation of waiver by simply arguing ineffective assistance of appellate counsel. *Turner*, 187 Ill. 2d at 413. The court pointed out that postconviction counsel's failure to raise this argument "prevented the circuit court from considering the merits of [defendant's] claims and directly contributed to the dismissal of the petition without an evidentiary hearing." *Turner*, 187 Ill. 2d at 413. The court in *Turner* also found that postconviction counsel elected to stand on a *pro se* petition which contained virtually no evidentiary support and failed to attach any affidavits in support of the defendant's claims or offer any explanation for their absence. *Turner*, 187 Ill. 2d at 414. Given the "totality of circumstances," the *Turner* court concluded that postconviction counsel's performance was unreasonable and fell below the level of assistance required by Rule 651(c). *Turner*, 187 Ill. 2d at 414. The court reversed the judgment of the trial court and remanded the matter with instruction that the trial court "evaluate the claims in [defendant's] post-conviction petition once [defendant's] counsel has made any amendments to the petition which are necessary for an adequate presentation of [defendant's] contentions." *Turner*, 187 Ill. 2d at 417 (citing *Johnson*, 154 Ill. 2d at 249).

¶ 36    Here, unlike *Turner*, postconviction counsel filed an amended petition that alleged a new due process claim and included legal citations and evidentiary support. However, as in *Turner*, counsel failed to amend the petition to allege ineffective assistance of appellate counsel which prevented the trial court from considering the merits of defendant's claim and directly contributed to the dismissal of the petition without an evidentiary hearing. *Turner*, 187 Ill. 2d at 413. Counsel's failure to allege ineffective assistance of appellate counsel essentially amounted to a failure to present the due process claim in "appropriate legal form" and placed defendant in the same position he would have found himself in had counsel not raised the claim at all. The record shows defendant dropped the claims in his *pro se* petition

-8-

and proceeded solely on counsel's amended petition and the due process claim contained therein. Although counsel's conduct in this case is readily distinguishable from the "total failure of representation" found in *Turner*, the result for defendant is the same: the merits of his petition were never reached by the trial court. Given this result and that defendant relied on postconviction counsel, we believe it is improper to affirm the dismissal of defendant's petition because of counsel's failure to make a "routine amendment" that would have presented his claim in the appropriate legal form. Rather, defendant must be afforded an opportunity to amend his petition to overcome the procedural bar of waiver. See *Turner*, 187 Ill. 2d at 417.

¶ 37   In support of this conclusion, we note that "in the case of post-conviction counsel's failure to overcome the procedural bar of waiver, the prejudice to petitioner is palpable." *Turner*, 187 Ill. 2d at 415. This is especially so where, as here, defendant's claim that his attorney Fabricius was delayed from seeing him is supported by some evidence. Fabricius testified at the suppression hearing that he was delayed from seeing defendant for about 10 minutes, during which time defendant signed the written confession. Defendant was not informed that his attorney was at the courthouse until after he signed the confession. See *People v. McCauley*, 163 Ill. 2d 414, 446 (1994) (when a defendant's attorney is delayed from seeing him, the defendant is "denied information necessary to knowingly and intelligently waive his right to his attorney's presence").

¶ 38   As a final matter, we reiterate that we express no opinion on the merit of defendant's claim or whether an evidentiary hearing on his claim would be appropriate in this case. See *Johnson*, 154 Ill. 2d at 246 (it is the duty of the trial court, not a reviewing court, to determine on the basis of a complete record whether the postconviction claim requires an evidentiary hearing).

¶ 39                                     CONCLUSION

¶ 40   For the reasons stated, we reverse the judgment of the trial court dismissing defendant's amended petition. The matter is remanded to the trial court with directions to conduct a second-stage evaluation after allowing defendant leave to amend his amended petition to assert a claim of ineffective assistance of appellate counsel. *Turner*, 187 Ill. 2d at 417.

¶ 41   Reversed and remanded with directions.